BELLE TERRACE, APPELLEE, V. STATE OF NEBRASKA, DEPARTMENT OF HEALTH AND HUMAN SERVICES FINANCE AND SUPPORT, APPELLANT.

742 N.W.2d 237

Filed December 7, 2007.    No. S-06-876.

Jon Bruning, Attorney General, John L. Jelkin, and, on brief, Douglas D. Dexter for appellant.

Elise Meerkatz and Abbie J. Widger, of Johnson, Flodman, Guenzel & Widger, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

This appeal arises out of a dispute between Belle Terrace and the Department of Health and Human Services Finance and Support (Department) as to what expenses should be considered by the Department in setting the Medicaid reimbursement rate for Belle Terrace. At issue is the cost basis of buildings purchased in 2000.

In June 2003, Belle Terrace submitted a cost report to the Department, claiming the cost basis for its buildings should be the cost of the buildings when they were purchased in 2000. The Department adjusted Belle Terrace's cost basis and requested that Belle Terrace report the 1972 cost of the buildings, which the Department would use to calculate the basis for depreciation. Belle Terrace appealed the audit adjustments to the director of the Department, and the director approved the adjustments. Belle Terrace appealed to the district court, arguing the audit adjustments were in error. The district court reversed the order of the director, and the Department appeals.

## SCOPE OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Chase 3000, Inc. v. Nebraska Pub. Serv. Comm.*, 273 Neb. 133, 728 N.W.2d 560 (2007); *Wilson v. Nebraska Dept. of Health & Human Servs.*, 272 Neb. 131, 718 N.W.2d 544 (2006); *Zach v. Eacker*, 271 Neb. 868, 716 N.W.2d 437 (2006); *Mortgage Elec. Reg.*

*Sys. v. Nebraska Dept. of Banking*, 270 Neb. 529, 704 N.W.2d 784 (2005).

## FACTS

Belle Holdings, Inc., doing business as Belle Terrace, is a skilled nursing facility located in Tecumseh, Nebraska. It was constructed in 1972 by the Lynn-Shuey-Schutz Joint Venture, which consisted of Gene Lynn, Keith Shuey, and John and Virginia Schutz. The Lynn-Shuey-Schutz Joint Venture owned the buildings and the real estate. Later, Lynn acquired the Schutzes' interest, giving Lynn a two-thirds interest and Shuey a one-third interest in the Lynn-Shuey Joint Venture.

Belle Holdings, which consisted of David Fleisner, Robert Shambora, and Sharon Colling, subsequently purchased the business operations and the lease of the land and buildings from an entity that had operated the nursing facility and had leased the land and buildings from the Lynn-Shuey Joint Venture.

In 2000, Belle Investments, L.L.C., which was owned by Fleisner, Shambora, Colling, and Shuey, purchased the land and buildings from the Lynn-Shuey Joint Venture. The total purchase price was $1,375,406.50. Belle Investments paid Lynn $916,937.67 and Shuey $458,468.83.

On May 1, 2002, Belle Holdings purchased the land and buildings from Belle Investments and, therefore, owned all the assets of the nursing facility. This was the first time in the nursing facility's history that the entity operating the facility and being reimbursed by Medicare and Medicaid also owned the land and buildings.

On its June 30, 2003, cost report, Belle Terrace listed the land and buildings on its depreciation schedule and included the interest payments and other costs associated with the Housing and Urban Development loan it used to purchase the nursing facility. Belle Terrace reported an adjusted land cost of $36,400 and an adjusted nursing home cost of $950,422. The Department disallowed the depreciation figures and asked Belle Terrace to provide information relating to the original cost of the buildings. When Belle Terrace failed to provide the requested information, the Department disallowed all depreciation expenses in Belle Terrace's cost report. It also disallowed the expense for

interest on the loan for the purchase of the land and buildings, the mortgage insurance protection required by the loan, and the amortization bond expense. The Department found that these were not allowable reimbursement costs based on the adjustment to the depreciation expense.

Belle Terrace appealed the adjustments, and a hearing was held in front of the director of the Department. The director found that the action of the Department in making audit adjustments to Belle Terrace's June 30, 2003, cost report was proper. It therefore affirmed the audit adjustments.

Pursuant to the Administrative Procedure Act, Neb. Rev. Stat. § 84-901 et seq. (Reissue 1999 & Cum. Supp. 2004), Belle Terrace appealed to the district court for Lancaster County. The issues presented to the district court were (1) whether the director erred in affirming the audit adjustments that disallowed Belle Terrace's expenses and (2) whether the director erred in applying the "related party rule" in order to disallow depreciation and interest expenses. The related party rule protects the Department from paying artificially inflated costs that may be generated from less than arm's-length bargaining when a facility is purchased from an organization related to the purchaser by common ownership or control.

The district court determined that the director erred in affirming the adjustments to Belle Terrace's expenses and erred in applying the related party rule in order to disallow the expenses used to calculate Belle Terrace's Medicaid reimbursement rate. It ordered the matter remanded to the Department with directions to allow these expenses as submitted by Belle Terrace on its June 30, 2003, cost report and to recalculate the nursing facility's Medicaid reimbursement rate accordingly. The Department appeals from the district court's order.

## ASSIGNMENTS OF ERROR

The Department assigns, restated and consolidated, that the district court erred in finding that its audit adjustments were in error.

## ANALYSIS

The central issue in this case is the meaning of the term "in existence" as it was used in 471 Neb. Admin. Code, ch. 12,

§ 011.06H (1992). The resolution of this issue will determine whether the 1972 cost or the 2000 cost of Belle Terrace's buildings should be used as the cost basis to determine depreciation and, in turn, other expenses.

The Department calculated Medicaid reimbursement payment rates for nursing facilities based on required annual cost reports submitted by the facilities and audited by the Department. See 471 Neb. Admin. Code, ch. 12, § 011.08B (2002). The Medicaid reimbursement rates were based on each facility's allowable costs incurred and documented in the cost report. See 471 Neb. Admin. Code, ch. 12, § 011.08D (2002). The Department then determined the facility-specific prospective per diem rate subject to certain limitation provisions.

At all times relevant to this case, § 011.06H provided that the fixed cost basis for facilities purchased as an ongoing operation was the lesser of the following:

> 1. The acquisition cost of the asset to the new owner;
>
> 2. The acquisition cost which is approved by the [Department] Certificate of Need process; or
>
> 3. For facilities purchased as an ongoing operation on or after December 1, 1984, the allowable cost of the asset to the owner of record as of December 1, 1984, or for assets not *in existence* as of December 1, 1984, the first owner of record thereafter.

(Emphasis supplied.) This section of the Nebraska Administrative Code used language similar to a federal Medicare regulation. See Medicare's "Provider Reimbursement Manual," part I, § 104.10(C). The federal Medicare regulations on depreciation define an asset "not in existence" as "any asset that physically existed, but was not owned by a hospital or [skilled nursing facility] participating in the Medicare program as of July 18, 1984." § 104.10(C)(1). The Nebraska Administrative Code did not define the term "in existence" but specifically stated that the Nebraska Administrative Code "replaces Medicare regulations on depreciation in their entirety." 471 Neb. Admin. Code, ch. 12, § 011.09 (2002).

The Department maintains that although the Nebraska Administrative Code employs virtually the same language as the federal Medicare regulation, Nebraska has not adopted the

federal Medicare definition of "in existence." The Department claims that "in existence" has a plain and ordinary meaning—physical existence—and that the term should be afforded such meaning. The Department further claims that the federal Medicare definition of "in existence" found in the depreciation section of the Medicare regulations does not apply because the Nebraska Administrative Code "replaces Medicare regulations on depreciation in their entirety," except for a small exception not applicable hereto. See § 011.09. The Department argues that because the Belle Terrace buildings physically existed on December 1, 1984, "the allowable cost of the asset to the owner of record" as of that date should have been used to calculate depreciation for purposes of Medicaid reimbursement. See § 011.06H.

Belle Terrace relies on the federal Medicare definition in arriving at its depreciation figures. Its position is that although the buildings physically existed, the buildings were not "in existence" for Medicaid purposes until they were owned by a skilled nursing facility participating in the Medicaid program, i.e., when Belle Holdings purchased the property and brought the property and operations under one ownership umbrella. Belle Terrace argues that the federal Medicare definition of "in existence" should be used because (1) the term "in existence" is ambiguous, (2) the term "in existence" has a peculiar and appropriate meaning in the reimbursement industry, and (3) federal authorities have not sanctioned the Department's definition of "in existence" because the Department failed to provide the required notice.

The district court found that the Department's regulations had created an ambiguity between state and federal law. The court stated that Nebraska had adopted into its administrative code language similar to that used in a federal Medicare regulation but that the Department was interpreting the term differently. The court noted that Nebraska had not adopted the federal Medicare definition of "in existence," yet no alternative definition was provided. Thus, according to the court, "Medicaid providers are left to guess whether the term 'in existence' should be afforded the meaning provided by federal regulations or the different definition argued for by the [Department]." The

court further found that the federal Medicare definition of "in existence" was commonly used in the Medicaid industry and that Belle Terrace was reasonable in relying on that definition in preparing its annual cost report. The court stated that if the Department "had intended to use a different meaning, it should have specifically redefined the term in order to avoid confusion." The court concluded that Belle Terrace should be reimbursed for depreciation of its nursing facility based on the historical cost of the building in 2000 when the nursing home was purchased by Belle Investments.

In our review of the order of the district court, we are guided by the following principles: It is a rule of statutory interpretation that in the absence of anything to the contrary, language contained in a rule or regulation is to be given its plain and ordinary meaning. See, *City of Alliance v. Box Butte Cty. Bd. of Equal.*, 265 Neb. 262, 656 N.W.2d 439 (2003); *Utelcom, Inc. v. Egr*, 264 Neb. 1004, 653 N.W.2d 846 (2002). Deference is accorded to an agency's interpretation of its own regulations unless plainly erroneous or inconsistent. *Sunrise Country Manor v. Neb. Dept. of Soc. Servs.*, 246 Neb. 726, 523 N.W.2d 499 (1994); *In re Application of Jantzen*, 245 Neb. 81, 511 N.W.2d 504 (1994). The meaning of a statute is a question of law, and a reviewing court is obligated to reach its conclusions independent of the determination made by the administrative agency. *Sunrise Country Manor, supra*; *Central Platte NRD v. State of Wyoming*, 245 Neb. 439, 513 N.W.2d 847 (1994).

After considering these principles, we reach our own conclusion independent of that of the district court. We find that the meaning of the term "in existence" is unambiguous; that the plain, direct, and ordinary meaning of "in existence" is physical existence; that the Department has consistently interpreted "in existence" to mean physical existence; and that the Department's regulations provided the proper notice.

The language of § 011.09 clearly states that the Nebraska Administrative Code replaces the federal Medicare regulations on depreciation except as provided within the code. Thus, the term "in existence" must be given its plain and ordinary meaning, which is clearly physical existence. Giving the term "in

existence" its plain and ordinary meaning, it is apparent that the Belle Terrace facility was constructed in 1972 and, therefore, was "in existence" in 1984.

The federal Medicare regulations relating to depreciation have not been adopted by the State of Nebraska with regard to Medicaid. More importantly, the record from the hearing before the Department establishes that the Department does not use Medicare's definition of the term "in existence." The record indicates that the Department has consistently applied the plain meaning of the term "in existence" in determining depreciation of nursing facilities for purposes of Medicaid reimbursement and that there have been no deviations in the application of this policy in the past. The Department's exclusion of the federal definition of "in existence" along with its consistent application of the plain meaning of "in existence" placed Belle Terrace on notice that "in existence" meant physical existence.

How an agency interprets its own regulations is a clear indication of the meaning of a term that the agency uses in its regulations. The Department's senior auditor testified that the Department has consistently interpreted § 011.06H to require that for facilities physically in existence and purchased as an ongoing operation after December 1, 1984, the cost basis is the allowable cost of the asset to the owner of record as of December 1, 1984. Therefore, because Belle Terrace has been in existence since 1972, the 1972 cost must be used as the basis for depreciation because the buildings physically existed on December 1, 1984.

We therefore conclude that the order of the district court directing that Belle Terrace should receive depreciation reimbursement based on the historical cost of the nursing home at the time of the purchase of Belle Investments in 2000 was in error in that it did not conform to the law and was not supported by competent evidence.

The Department also claims that the district court erred in finding that the Lynn-Shuey Joint Venture and Belle Investments were not related parties. Since we have decided the cause on the issues raised above, we decline to consider this issue. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. *Papillion Rural*

*Fire Prot. Dist. v. City of Bellevue, ante* p. 214, 739 N.W.2d 162 (2007).

## CONCLUSION

We reverse the judgment of the district court for Lancaster County and remand the cause with directions to reinstate the director's order.

REVERSED AND REMANDED WITH DIRECTIONS.