745 N.W.2d 570 (2008)
275 Neb. 146
Will PROUT and Big John's Billiards, Inc., a Nebraska Corporation, Appellants,
v.
NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES REGULATION AND LICENSURE, Appellee.
No. S-06-764.
Supreme Court of Nebraska.
February 22, 2008.
Andrew M. Loudon and Jacob Wobig, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellants.
Teresa M. Hampton, Special Assistant Attorney General, for appellee.
HEAVICAN, C.J., and WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*571 WRIGHT, J.

NATURE OF CASE
Big John's Billiards, Inc., and its owner, Will Prout (collectively Big John's), sought a waiver under the Nebraska Clean Indoor Air Act (Act), Neb.Rev.Stat. § 71-5701 et seq. (Reissue 2003 & Cum.Supp.2006), to allow smoking in pool halls in Lincoln and Omaha. The Nebraska Department of Health and Human Services Regulation and Licensure (Department) denied the waiver, and Big John's filed a petition for review in the Lancaster County District Court. The court affirmed the denial of the waiver. Big John's appeals.

SCOPE OF REVIEW
A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Belle Terrace v. State, 274 Neb. 612, 742 N.W.2d 237 (2007).

FACTS
The pool halls at issue are located in 13,000-square-foot buildings. Each has only one front door for use by customers. The pool halls include a bar and a delicatessen where "burgers and fries" are prepared. The buildings have 18-foot ceilings, and each building has six large "smoke eaters" to remove smoke. A warning sign posted on the front door of each pool hall states: "WARNING[:] `SMOKER FRIENDLY POOL HALL[.]' The air in this building may be hazardous to your health[.] NON-SMOKERS ENTER AT AT [sic] YOUR OWN RISK[.] IT'S YOUR CHOICE[.] Cigarette Smoke Cleaned Electronically[.]"
Under the Act, a waiver from its provisions may be granted by the Department if an applicant demonstrates compelling reasons for a waiver and establishes that the waiver will not significantly affect the health and comfort of nonsmokers. Big John's filed an application seeking a waiver for the pool halls. The Department determined that Big John's had not met the requirements of the Act, and it denied the request for a waiver.
After the denial, Big John's requested a hearing before the Department. Evidence at the hearing applied in large part to the Omaha pool hall only because, at the, time of the administrative hearing, Lincoln had passed a city ordinance banning smoking entirely, and Prout said the Lincoln facility was in compliance with the ordinance. At that' time, Omaha did not have an ordinance banning smoking in public places,
Prout testified that when the pool hall was full, 90 percent of the customers smoked. He said it was not possible to have a nonsmoking area at the time he built the pool halls 25 years ago. He had not attempted to modify the buildings because he did not believe it was possible to create nonsmoking areas that would comply with the Act's requirements. Any modification would require removal of some pool tables to build a second handicapped ramp. According to Prout, the food service area could not be separated because customers are "wandering around. They're playing pinball. They're going to the dart machines. They're playing shuffleboard. They're sitting there at the tables." The pool tables cannot be moved because of their weight and because the lighting above the tables was installed 25 years ago. A pool cue is 5 feet long, and *572 Prout said there needs to be room between tables to "draw the stick and shoot the balls." Prout said moving the tables closer together would create space problems. Prout said it did not make sense to convert 50 percent of the business to nonsmoking when 90 percent of his customers were smokers, because he would lose revenue.
Applications for employment with Big John's had the following statement at the top of the form:
Big John's Billiards is a smoker friendly pool hall and your employment will expose you to secondhand smoke. Secondhand smoke is a documented health hazard resulting in many diseases that may cause death. The effect of secondhand smoke is a non-issue to smokers. Employment of non-smokers is at the discretion of the management. By signing this application you are exercising your right to work in a building that is not smoke-free and protected by the laws of the local city government.
Todd Falter, who oversaw the Act as the environmental health programs manager for the Department, recommended denial of the waiver. He testified that Big John's came within the statutory definition of a retail store because it sold pool cues and T-shirts, it came within the statutory definition of a bar because it sold alcohol, and it came within the statutory definition of a restaurant because it served food. Falter said the economic effect of the Act on a business was not a factor in determining whether a waiver should be granted. Rather, the decision was based on public health concerns. Falter said one waiver had been granted in the previous 2 years  for the Lied Center for Performing Arts in Lincoln to allow smoking onstage by performers.
Falter said one factor taken into consideration in denying the waiver was that food inspectors, liquor commission inspectors, tax commissioners, and law enforcement representatives could all be required to enter Big John's as a part of their employment, and they would be required to be in a smoking area against their wishes.
Falter stated that the pool hall could be divided to provide a nonsmoking section which would allow smokers to have access to all the same facilities available to nonsmokers while not requiring nonsmokers to pass through the smoking area to use the amenities of the establishment. The Act does not require that the amenities be equal in both sections. It requires only that access be provided to all amenities, Falter said.
After the hearing, the Department's director entered an order finding that Big John's had not demonstrated a compelling reason to grant a waiver, that Big John's had failed to demonstrate that the waiver would not significantly affect the health and comfort of nonsmokers, and that the health and comfort of non-smokers would not be protected as well with a waiver as they would be under the provisions of the Act. The director affirmed the denial of the application for the waiver.
Big John's sought review in the district court. The court affirmed the decision of the Department, finding that Big John's should not be granted a waiver for either location.

ASSIGNMENTS OF ERROR
Big John's claims that the district court erred in concluding (1) that the Department did not err in determining that the reasons given by Big John's for requesting a waiver from the Act were not compelling and that granting Big John's a waiver from the Act would significantly affect the health and comfort of nonsmokers and (2) that the refusal of the Department to *573 grant a waiver from the Act was not unreasonable, arbitrary, and capricious.

ANALYSIS
The purpose of the Act is to "protect the public health, comfort, and environment by prohibiting smoking in public places and at public meetings except in designated smoking areas. § 71-5702. A waiver from the Act's requirements may be granted if the Department "determines there are compelling reasons to do so and a waiver will not significantly affect the health and comfort of nonsmokers." § 71-5711. The Department's regulations provide little additional guidance as to the factors that will be taken into consideration to determine whether to grant a waiver. The regulations state: "In order to grant a waiver, the Department must determine that the health and comfort of nonsmokers would be protected as well under a waiver as if there were compliance with the Act." 178 Neb. Admin. Code, ch. 7, § 006.03 (2003).
At the hearing before the Department, Prout testified that 90 percent of the customers in the pool halls smoked. He stated that it would not be possible for him to make part of the building a nonsmoking area in order to comply with the Act. The compelling reason he presented for the waiver was the decrease in revenue he believed would occur if smoking was not allowed. Prout said that after the smoking ban was passed in Lincoln, the revenue for the Lincoln facility was cut in half, dropping from $600,000 per year to $300,000 per year. However, the record showed that the Lincoln facility had reopened and was complying with the city ordinance at the time of the hearing.
There was evidence that the pool halls had only one public entrance, and even if customers were warned by the sign at the entrance, other persons, such as food inspectors, liquor commission inspectors, tax commissioners, and law enforcement representatives would be required to enter Big John's as a part of their employment. Employees were informed on the employment application that the pool halls allowed smoking, but there was no area where nonsmokers could avoid the smoke caused by the 90 percent of the customers who smoked.
A drawing of the layout of the Omaha pool hall was entered into the record. It indicates a single public entrance. Customers check out billiard balls and request a table at a billiards desk. Prout explained that when customers make a reservation for a table, they are assigned the next available table regardless of its location. The billiards desk is located next to a bar and delicatessen area where food is served. There are 12 pinball machines near the bathrooms, which are in the corner near the front entrance. Prout said he cannot simply divide the pool hall in half because there is only one restroom, so he could not make one restroom available for smokers and one for nonsmokers.
However, Falter stated that the facility could be configured to come into compliance with the Act. The most obvious way would be to divide the building in half and create a nonsmoking section near the entrance. It could include pool tables and stools and still allow access to the restrooms and food area. Additional pool tables, other tables, and stools at the rear of the building could be designated as a smoking area. Prout disputed that the building could be adequately divided because 90 percent of the patrons are smokers.
The district court found that Big John's had not shown that granting a waiver would not significantly affect the health and comfort of nonsmokers or that nonsmokers would be protected as well as *574 they would be if there was compliance. The court found no merit in the argument by Big John's that it is a public place that was not contemplated by the Legislature when the Act was written. Although Big John's argued that undue financial burden should be a consideration in granting a waiver, the district court noted that Nebraska law does not mention financial burden as a basis for a waiver. The court stated that legislative history suggests financial consideration was not intended as a factor because the Legislature stated that the health, welfare, and comfort of the citizens far outweighed the economic effects as a result of the Act.
The district court noted that even if financial burden were a consideration, Big John's had not presented evidence of such. The Omaha facility could come into compliance by designating half of its existing facility as nonsmoking, but Big John's had made no attempt to come into compliance. The court found that nonsmoking members of the public were required to enter the building, including health inspectors and law enforcement.
[1, 2] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. Belle Terrace v. State, 274 Neb. 612, 742 N.W.2d 237 (2007). When reviewing such an order, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See id.
[3] The district court's order was not arbitrary, capricious, or unreasonable. Big John's did not demonstrate any compelling reason for a waiver except to argue that it would be impacted financially. The Act does not identify financial burden as a compelling reason for a waiver. In addition, Big John's did not show that the health and comfort of nonsmokers would not be significantly affected if a waiver were granted. Simply providing warnings to persons who enter the building does not protect them from smoke. And the claim that 90 percent of the customers smoke does not support a finding that the health and comfort of the other 10 percent would not be significantly affected if a waiver were granted.
Prout testified that he had made no attempt to comply with the Act's requirements. In fact, he did not believe it would be possible to come into compliance by modifying the pool halls. However, Falter, the Department's representative, testified that Big John's could divide the Omaha building into smoking and nonsmoking areas and thereby comply with the Act.

CONCLUSION
We find no error on the record. The record shows that the district court's affirmance of the Department's denial of a waiver conformed to the law, was supported by competent evidence, and was not arbitrary, capricious, or unreasonable. The judgment of the district court Is affirmed.
AFFIRMED.