Marion's Quality Services, Inc., doing business as
It's a Kidz World Child Care Center and as Deb's
Learning Place Family Child Care Home II,
a Nebraska corporation, appellant, v.
Nebraska Department of Health and
Human Services, Regulation and
Licensure/Licensure Unit and
Division of Public Health,
et al., appellees.
___ N.W.2d ___

Filed January 30, 2015.    No. S-13-834.

1. **Administrative Law: Final Orders: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.
2. **Administrative Law: Judgments: Appeal and Error.** When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Administrative Law: Appeal and Error.** Deference is accorded to an agency's interpretation of its own regulations unless plainly erroneous or inconsistent.
4. **Administrative Law: Evidence.** The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it.
5. **Administrative Law: Words and Phrases.** Agency action is arbitrary and capricious if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable person to the same conclusion.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

James R. Place, of Place Law Office, for appellant.

Jon Bruning, Attorney General, Michael J. Rumbaugh, and James D. Smith for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Wright, J.
## NATURE OF CASE
Marion's Quality Services, Inc. (Marion's), is a Nebraska corporation doing business as It's a Kidz World Child Care

Center (Center) and as Deb's Learning Place Family Child Care Home II (Home). In 2012, the Nebraska Department of Health and Human Services (DHHS) revoked Marion's licenses to operate the Center and the Home.

Following an appeal hearing, DHHS upheld the revocation of the Home's license but reversed the revocation of the Center's license, instead imposing additional probation and a civil penalty.

This appeal is governed by the Administrative Procedure Act, and Marion's appeals from the judgment of the district court which affirmed DHHS' disciplinary actions. For the reasons discussed below, we affirm the judgment of the district court.

## SCOPE OF REVIEW

[1-3] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Kerford Limestone Co. v. Nebraska Dept. of Rev.*, 287 Neb. 653, 844 N.W.2d 276 (2014). See, also, Neb. Rev. Stat. § 84-918 (Reissue 2014). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Betterman v. Department of Motor Vehicles*, 273 Neb. 178, 728 N.W.2d 570 (2007). Deference is accorded to an agency's interpretation of its own regulations unless plainly erroneous or inconsistent. *Belle Terrace v. State*, 274 Neb. 612, 742 N.W.2d 237 (2007).

## FACTS

Marion's is owned by Richard Marion and Angela Marion, a married couple. The Center has been licensed since May 23, 2006, for up to 123 children. The Home has been licensed since August 28, 2002, for up to 12 children, but it has not been in operation for some years. DHHS is a state agency responsible for the enforcement of the Child Care Licensing Act.

On July 21, 2008, DHHS placed the Center on probation for 1 year and imposed a civil penalty for various violations relating to the responsibilities of the director and licensing process, child-staff ratio, and infant care and supervision. On April 10, 2009, DHHS extended the Center's probation another year (until July 21, 2010) because a busdriver had left two children in a van in subzero temperatures for approximately 10 minutes. Despite a citation for child abuse/neglect, the Center allowed the driver to transport children the following day.

On or about May 26, 2010, childcare inspection specialist Susanne Schnitzer conducted an onsite investigation of allegations of improper discipline at the childcare center of Marion's on West Dodge Road in Omaha (Dodge Center), which has since closed. Schnitzer found that one of the Dodge Center's staff members, Carla Marion, had inappropriately disciplined children by "thumping, kicking and purposely tripping along [with] throwing an object at a child and twisting the cheek of . . . another child." Carla Marion, Richard Marion's sister, resigned before the investigation concluded.

On March 14, 2011, the Center was placed on probation for another year based on various violations, including misbehavior by a member of the Center's staff and the director's failure to supervise and correct the behavior, despite several complaints from parents. During the investigation of the complaints, the Center was found to have violated a regulation requiring it to obtain additional background information from the appropriate law enforcement agency regarding one of its staff members.

On April 11, 2011, DHHS received a request to conduct a check for Cristina Carrizales on the Nebraska Central Registry of Child Abuse and Neglect and the Nebraska Adult Protective Services Central Registry, which is required for any prospective employee prior to beginning work at a licensed childcare. Although Carrizales did not have a criminal history, the Center's timecard records showed that Carrizales had begun working 2 weeks prior to the registry checks being completed.

On May 24, 2011, DHHS issued a "Notice of Revocation" to the Center. The notice was issued following DHHS' investigation into a complaint concerning events that took place on March 29, only 2 weeks after the Center had been placed on probation on March 14. The Center had employed two incarcerated felons who were on work release, Shannon Tays and Greta Johnson. Both women failed to completely and accurately disclose their criminal histories.

Despite being incarcerated, both Tays' and Johnson's "Felony/Misdemeanor Statements" provided incomplete information, and one indicated that she had no prior law enforcement contacts. Marion's did not request additional information from any law enforcement agency to verify those statements. Marion's had been aware that Tays and Johnson were incarcerated on theft by deception charges. On various occasions, it had provided the women rides from a correctional facility to the Center. Tays had five previous convictions for felony forgery and one for possession of methamphetamine.

On June 3, 2011, DHHS issued to the Home a "Notice of Revocation and Denial" of the Home's application to amend its license. DHHS issued the notice because the Home did not conduct background checks for three staff members listed on the application to ensure that the criminal history disclosures were accurate. On the application, Marion's listed as prospective employees both Carla Marion and Shonae Doremus. Doremus disclosed various misdemeanor tickets and convictions for possession of marijuana, flight to avoid arrest, and several theft offenses. She did not disclose contacts with law enforcement for operating a vehicle under suspension, furnishing tobacco to a minor, and failure to appear.

Marion's submitted an administrative appeal of both notices, and the cases were combined for purposes of conducting a DHHS administrative appeal hearing. The hearing was commenced on December 5, 2011; continued on February 27, 2012; and concluded on May 15.

On October 3, 2012, DHHS issued an order upholding the denial and revocation of the license for the Home for the following reasons: hiring without investigating three new

employees who had not fully disclosed their criminal histories, past violations regarding previously investigated and substantiated allegations of inappropriate discipline by one of the staff members, and history of noncompliance by Marion's at other licensed locations.

DHHS did not revoke the license of Marion's to operate the Center. But in lieu of revocation of the license, DHHS imposed an alternative penalty in the form of additional probation and a civil sanction of $615. This action resulted from the hiring of Tays and Johnson by Marion's without conducting a background check. Tays and Johnson are felons. DHHS found that hiring two felons with convictions of crimes of moral turpitude and possession of methamphetamine was against DHHS regulations and therefore violated the Center's probation.

Marion's appealed DHHS' order to the Lancaster County District Court, which reviewed the case de novo. On August 26, 2013, the district court affirmed DHHS' decision. It found that the Center had violated the terms of its probation by failing to request additional information about employees that were hired as staff. The court concluded that the regulations impose a duty to request additional information from law enforcement agencies and that Marion's neglected its responsibility by relying solely on employee self-reporting. The court rejected the claim of Marion's that it lacked knowledge about the employees' dishonesty in reporting their criminal histories. The court found that Marion's had demonstrated it was either unable or unwilling to comply with DHHS regulations at its childcare centers and therefore upheld DHHS' sanctions. Marion's appealed.

## ASSIGNMENTS OF ERROR

Marion's assigns two errors: (1) The district court's ruling upholding DHHS' findings regarding the Center's license did not conform to law, was not supported by competent evidence, and was arbitrary, capricious, and not reasonable, and (2) the district court's ruling upholding DHHS' findings regarding the Home's license did not conform to law, was not supported by competent evidence, and was arbitrary, capricious, and not reasonable.

ANALYSIS

Our inquiry is whether the order of the district court conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. See *Belle Terrace v. State*, 274 Neb. 612, 742 N.W.2d 237 (2007). DHHS had the authority to deny a license or take disciplinary action against a licensee pursuant to the Child Care Licensing Act for any of the following reasons:

> (1) Failure to meet or violation of any of the requirements of the Child Care Licensing Act or the rules and regulations adopted and promulgated under the act;
>
> (2) Violation of an order of [DHHS] under the act;
>
> . . . .
>
> (4) Conduct or practices detrimental to the health or safety of a person served by or employed at the program . . . .

Neb. Rev. Stat. § 71-1919 (Reissue 2009).

The Legislature has authorized DHHS to make various rules and regulations necessary for the care and protection of children. That authorization extends to making rules for childcare providers and facilities. Although DHHS' rules have been revised and recodified, those revisions became operative on May 20, 2013, after the revocations in this case occurred, so we will refer to the rules in effect at the time of the revocations in May and June 2011. One such rule is 391 Neb. Admin. Code, ch. 8, § 006 (1998), which provided the following: "Candidates being considered for employment . . . shall submit a signed 'Felony/Misdemeanor Statement' to the licensee or director. *The licensee or director shall request additional information from the appropriate law enforcement agency as needed to comply with* [*DHHS*] *regulations*." (Emphasis supplied.)

The prospective employee's "Felony/Misdemeanor Statement" must report any arrests, misdemeanor tickets, pending criminal charges, and/or convictions. See 391 Neb. Admin. Code, ch. 8, § 007 (1998). Additionally, the administrative code provides: "The licensee and the director shall not knowingly allow any person . . . who has been convicted of . . . crimes involving the illegal use of a controlled substance, or

crimes involving moral turpitude to be on the center premises." 391 Neb. Admin. Code, ch. 8, § 002 (1998).

Under the Nebraska Administrative Code, a license may be denied based upon "[t]he applicant's unwillingness or inability to comply with regulations." 391 Neb. Admin. Code, ch. 3, § 001.12(1) (1998). Regarding penalties for violations, DHHS is empowered to

> initiate suspension or revocation proceedings under any of the following circumstances:
>
> 1. When a licensee has shown a history of repeated violations of regulations;
>
> 2. When a licensee has violated a regulation(s) so as to create a situation which places children at substantial risk; [or]
>
> 17. When a licensee has violated any regulation[.]

391 Neb. Admin. Code, ch. 4, § 001.04 (1998).

[4,5] In interpreting administrative agency regulations, deference is accorded to an agency's interpretation of its own regulations unless plainly erroneous or inconsistent. *Belle Terrace, supra*. The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it. *Fleming v. Civil Serv. Comm. of Douglas County*, 280 Neb. 1014, 792 N.W.2d 871 (2011). Agency action is arbitrary and capricious if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable person to the same conclusion. See *Hickey v. Civil Serv. Comm. of Douglas Cty.,* 274 Neb. 554, 741 N.W.2d 649 (2007).

From our review of the record, we conclude that the district court's findings were supported by competent evidence and were not arbitrary, capricious, or unreasonable.

## Sanctions Against Center

The Center was on probation effective March 14, 2011, and was required to maintain compliance with all DHHS regulations as part of its probation. The district court was presented with sufficient evidence to find that Marion's violated its probation by allowing persons convicted of crimes of moral

turpitude and controlled substance possession on the Center's premises and by failing to request additional information from law enforcement agencies about the criminal histories of its newly hired employees.

On March 29, 2011, only 2 weeks after the Center began its probation, the Center was subject to another complaint leading to an investigation. That investigation revealed that the Center failed to verify the criminal backgrounds of several employees before hiring them. Those employees had numerous felony convictions, including theft by deception and fraud. One of the employees had a conviction for possession of methamphetamine.

Prior to being hired, all applicants being considered for employment were required to submit a signed "Felony/ Misdemeanor Statement" to the licensee or director. See 391 Neb. Admin. Code, ch. 8, § 006. "*The licensee or director shall request additional information from the appropriate law enforcement agency as needed to comply with* [*DHHS*] *regulations*." *Id*. (Emphasis supplied.)

Despite the plain language of chapter 8, § 006, Marion's insists that "[n]o other criminal background check(s) are required by the [regulations]" unless the prospective employee indicated that he or she had contacts with law enforcement. See brief for appellant at 33. Stated simply, the approach of Marion's was to rely solely on the prospective employee's truthfulness in reporting his or her criminal history without further investigation. This position is misguided.

This interpretation of Marion's as to the regulation contradicts both the plain language and the underlying purpose and intent of the regulation. Failing to request additional information from law enforcement agencies is particularly troubling given that Marion's knew both Tays and Johnson were incarcerated for theft by deception. We find that the district court's finding that Marion's failed to comply with all DHHS rules was supported by sufficient evidence. Under chapter 8, § 002, childcare centers are prohibited from knowingly allowing a person who has been convicted of crimes involving the use of a controlled substance or crimes involving moral turpitude to be on the Center's premises.

Marion's contends that theft by deception is not an automatic bar to employment. It references DHHS employee Schnitzer's "admission" to that effect. But our reading of the record concludes that Schnitzer merely indicated that whether such an offense would disqualify a prospective staff member depends on several factors, such as how long ago the offense occurred, whether it resulted in a conviction, and whether the offense was a misdemeanor or a felony. This court has held that "'[i]t is generally accepted that larceny . . . and theft are crimes that involve moral turpitude.'" *Hruby v. Kalina*, 228 Neb. 713, 716, 424 N.W.2d 130, 132 (1988).

We reject the contention of Marion's that it cannot violate the rule because it did not *technically* know of Tays' and Johnson's criminal histories. But ignorance of their employees' criminal records is not an excuse and would sanction an employer's lack of proper investigation of its employees. It is undisputed that Marion's knew at the time it hired Tays and Johnson that each had been convicted of theft by deception. Marion's was aware that Tays and Johnson were incarcerated at the Omaha Correctional Center and were participating in the work release program. Angela Marion gave Tays and Johnson rides from the facility on 10 to 12 occasions. This knowledge alone should have been sufficient for Marion's to be on notice that these employees had lied on their "Felony/Misdemeanor Statements." One stated that she had no law enforcement contacts. However, being a felon on work release, she had daily contact with law enforcement. The district court had sufficient evidence to find that Marion's had violated chapter 8, § 002.

The record contains sufficient evidence to sustain the district court's finding that Marion's had a duty under chapter 8, § 006, to request additional information from the relevant law enforcement agencies about prospective staff members and employees and that it violated that duty. The district court had sufficient evidence to find that Marion's had violated chapter 8, § 002, by knowingly allowing persons who had been convicted of crimes involving the illegal use of a controlled substance and crimes of moral turpitude to be employed by the

Center. Consequently, we find no error on the record regarding the sanctions against the Center for violating its terms of probation.

## SANCTIONS AGAINST HOME

The Home is licensed as a different type of childcare center than the Center and was inactive at the time of most of the violations noted in the record. However, the failure of Marion's to comply with DHHS regulations on its application to amend the Home's license and violations at its other childcare centers supports our determination that the district court's ruling was not arbitrary, capricious, or unreasonable. Our review of the record shows a substantial history of complaints, investigations, sanctions, and other actions against childcare providers at the Center and the now-closed Dodge Center.

DHHS regulations impose a duty on the childcare provider to report to DHHS the criminal history of its employees. See 391 Neb. Admin. Code, ch. 6, § 004.03 (1998). The record shows that on its application to amend the Home's license, Marion's included Carla Marion and Shantee Richardson, both of whom claimed not to have had prior law enforcement contacts or criminal history. Carla Marion, Richard Marion's sister, had resigned from the now-closed Dodge Center in the midst of allegations of improper discipline. Carla Marion had a number of misdemeanor driving offenses. Richardson had convictions for carrying a concealed weapon and possession of a controlled substance.

Marion's also included Doremus on its application, despite her disclosure of misdemeanor tickets, possession of marijuana, flight to avoid arrest, and several theft charges. Doremus did not disclose convictions for driving during suspension, furnishing tobacco to a minor, and failure to appear. Marion's did not attempt to confirm any of the employees' backgrounds.

DHHS regulations support sanctions against the Home for violations that occurred at the other childcare centers owned by Marion's. Sanctions and penalties in the regulations are directed at the owners and operators of childcare centers

in addition to the individual childcare centers. The regulations contemplate denying a license application based on the *applicant's* unwillingness or inability to comply with DHHS regulations. See 391 Neb. Admin. Code, ch. 3, § 001.12(1). Although the Home had not been in operation for some time when it submitted its application, there was sufficient evidence for the district court to determine that Marion's was either unwilling or unable to comply with DHHS regulations based on its conduct and numerous other violations at its other childcare centers.

In its brief, Marion's states, "No injuries or damages were incurred as a result of the alleged violations. No children were hurt . . . as a result of any of the alleged violations." Brief for appellant at 19. This argument fails to recognize the preventative purpose of the regulations and the prospective deterrent effect of sanctions. We reject the suggestion that DHHS or a court must wait until a child is physically injured before taking action.

From our review of the record and applicable statutes and regulations, we conclude that the district court's finding that Marion's failed to adhere to DHHS regulations was supported by competent evidence, conformed to the law, and was not arbitrary, capricious, or otherwise unreasonable. Consequently, we find no error on the record.

## CONCLUSION

For the above reasons, we affirm the judgment of the district court.

AFFIRMED.